IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID VELASQUEZ,

    Petitioner,   No. CIV S-09-0243 FCD DAD (HC)

    vs.

D.K. SISTO,

    Respondent.   FINDINGS AND RECOMMENDATIONS

_____/

    Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition before this court petitioner challenges a decision by the California Board of Parole Hearings (hereinafter "Board") to deny him parole for two years at his parole consideration hearing held on September 11, 2007.[1] Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

---

[1] Petitioner's challenge to the Board's February 17, 2005 decision denying him parole was recently adjudicated in an August 13, 2010 order, in which the district court found that petitioner was not entitled to federal habeas relief. Velasquez v. Horel, No. 2:06-CV-02618 JCW, 2010 WL 3220193 (E.D. Cal. Aug. 13, 2010).

1

PROCEDURAL BACKGROUND

On July 27, 1982, petitioner was convicted of second degree murder in the Los Angeles County Superior Court. (Petition (hereinafter "Ptn.") at 1.) Thereafter, he was sentenced to a state prison term of fifteen years to life. (Id.) Petitioner began serving his term in September 1982 and was first eligible for parole on February 26, 1990. (Pet., Ex. A (hereinafter "Board Hearing") at 8.)

On September 23, 2003, following a hearing, the Board found petitioner suitable for parole. On February 24, 2004, the Governor reversed the Board's grant of parole. Petitioner again requested release on parole, but the Board found him unsuitable following a hearing on February 17, 2005. (Board Hearing at 15; see also Velasquez v. Horel, No. 2:06-CV-02618 JCW, 2010 WL 3220193, at *2 (E.D. Cal. Aug. 13, 2010).)

In the decision being challenged in this federal habeas proceeding, the Board found that petitioner was unsuitable for parole following a hearing on September 11, 2007, and denied parole for two years. (Board Hearing at 86.)

On January 28, 2008, petitioner filed a petition for habeas corpus in the Los Angeles County Superior Court challenging the Board's September 11, 2007 determination. (Answer, Ex. 1.) On May 2, 2008, the Superior Court denied the petition in a reasoned decision. (Answer, Ex. 2 (hereinafter, "Opinion") at 1-2.) On June 9, 2008, petitioner raised the same claims in a petition to the California Court of Appeal for the Second Appellate District. (Answer, Ex. 3.) On July 19, 2008, the California Court of Appeal denied the petition, indicating that the Board's decision was lawful under California law. (Answer, Ex. 4.) The California Supreme Court summarily denied an identical habeas petition filed by petitioner. (Answer, Exs. 5, 6.)

On January 27, 2009, petitioner filed the instant petition. (Doc. No. 1.) Respondent filed an answer on May 4, 2009. (Doc. No. 12.) A traverse was filed on May 29, 2009. (Doc. No. 13.)

FACTUAL BACKGROUND

The Board described the facts of petitioner's commitment offense at the September 11, 2007 parole suitability hearing as follows:

> [O]n November 13, 1981 inmate Velasquez became involved in an altercation at the residence of Linda Benjamin . . . in West Los Angeles. . . [T]he investigation revealed several different accounts of the cause of the altercation between Inmate Velasquez, and the victim, Pam [Martinelli.] Witnesses advised law enforcement that the victim was going to inform, that is pass on information to law enforcement on inmate David Velasquez. Witnesses told law enforcement that the victim was leaving when crime partner Alan Ochoa stopped her outside and began striking her with his fist. Witnesses advised law enforcement that Mr. Velasquez then approached the victim with an ice pick that he kept in his van, and began stabbing her. She was stabbed 16 times in the chest with wounds puncturing her heart, aorta, and lungs; her throat was also slashed three times. Her body was then dumped in a trash bin . . . in Culver City. The body was discovered at that location the following morning. Witnesses who were present at the time of the altercation advised law enforcement that they heard Inmate Velasquez and crime partner Alan Ochoa say that they had killed her.

(Board Hearing at 10-11.)

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

3

1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

        The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached

the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner claims that the Board's September 11, 2007 decision was not supported by evidence that he would pose an unreasonable risk to society if released.  He argues that the he was found suitable for parole in 2003 and has not engaged in any activities  since that time that show him to pose a danger to society. (Pet. at 5.) He alleges that the Board unconstitutionally relied on his commitment offense, as well as "vague descriptive language" to deny him parole, despite "over 25 years of non-violent positive programming while incarcerated." (Id. at 56; see id., Attached Petition to California Supreme Court at 3.)  For these reasons, he claims the Board's 2007 decision denying parole violated his constitutional right to due process.

III. Applicable Law

  A. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).[2]

---

[2] In the context of parole proceedings, the "full panoply of rights" afforded to criminal defendants is not "constitutionally mandated" under the federal Due Process Clause. Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. Hayward v. Marshall, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting Greenholtz, 442 U.S. at 16). See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); see also Hayward v. Marshall, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz, 442 U.S. at 12). See also Allen, 482 U.S. at 376-78; Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long established."); Hayward, 603 F.3d 562-63 ("Although the Due Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion.")

In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. Hayward, 603 F.3d at 562 (citing In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002). Therefore, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

902). This liberty interest is enforceable under the federal Due Process Clause pursuant to clearly established federal law. Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010); Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson, 606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010) (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for compliance with California's 'some evidence' rule, Hayward holds that California state constitutional law creates a cognizable interest in parole absent 'some evidence' of dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter of clearly established federal law.")

    B. California's Statutes and Regulations on Parole

When a federal court assesses whether a state parole board's suitability determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the state regulatory, statutory, and constitutional law that governs parole suitability determinations in California." Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62). The setting of a parole date for a California state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402. The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b): "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). In California, the overriding concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005). This "core determination of 'public safety' . . . involves an assessment of an inmates *current* dangerousness." In re Lawrence, 44 Cal. 4th at

7

1205 (emphasis in original). Accordingly,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)). "In short, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Pirtle, 611 F.3d at 1021 (quoting Hayward, 603 F.3d at 562). See also Cooke, 606 F.3d at 1214.[3]

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078. The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). In determining whether an inmate is suitable for parole, the Board must

---

[3] As the Ninth Circuit has explained, the "some evidence"

> requirement imposes substantive rather than purely procedural constraints on state officials' discretion to grant or deny parole: "a reviewing court . . . is not bound to affirm a parole decision merely because the Board or the Governor has adhered to all procedural safeguards." In re Lawrence, 44 Cal.4th [at 1210]. Rather the court must ensure that the decision to deny parole is "supported by some evidence, not merely by a hunch or intuition." Id. [at 1212].

Cooke, 606 F.3d at 1213-14.

consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness.")

The regulation identifies circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances are identified as tending to show that a prisoner is suitable for release:  the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; the prisoner committed his crime as the result of significant stress in his life; the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; institutional activities indicate an enhanced ability to function within the law upon release. Id., §

2281(d).

The following circumstances are identified as tending to indicate unsuitability for release: the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a previous record of violence; the prisoner has an unstable social history; the prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to the offense; the prisoner has engaged in serious misconduct in prison. Id., § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Id., § 2281(c)(1)(A) - (E).

In the end, under state law as clarified by the California Supreme Court,

> the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (*Dannenberg, supra*, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].) Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In this federal habeas action challenging the denial of release on parole it is the court's task to determine "whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of

10

the evidence.'" Hayward, 603 F.3d at 563. See also Pearson, 606 F.3d at 609 ("Hayward specifically commands federal courts to examine the reasonableness of the state court's determination of facts in light of the evidence."); Cooke, 606 F.3d at 1213. Accordingly, below the court considers whether the Board's decision to deny parole in this case constituted an unreasonable application of the "some evidence" rule.

IV.  Board Hearing

In stating its reasons for denying parole in 2007, the Board first described "static factors" such as the nature of petitioner's crime:

> [I]f we look at the commitment offense, this was a particularly gruesome crime in that the victim, without anything other than verbal provocation, was stabbed 16 times in the chest, and there were slash marks on her neck . . . [These] demonstrate that there was a tremendous amount of anger, and a propensity of violence by the person who committed the crime, and that was you. This offense was carried out in a manner that demonstrates an exceptional callous disregard for human suffering . . . [I]n addition your motivation for this crime was inexplicable or very trivial in relation to the offense[.]

(Board Hearing at 80-81.) In addition, the Board took into account petitioner's prior criminal history, which included a juvenile conviction for burglary and adult convictions for robbery and commercial burglary. (Id. at 81-82; see id. at 11-12.) The Board also noted that, at the time of the commitment offense, petitioner was "under the influence of alcohol and drugs" and "in unstable relationships with others." (Id. at 81.)

The Board next described "dynamic factors" based on petitioner's actions following his conviction. (Id. at 80.) Positive factors included petitioner's lack of violent incidents in prison and his development of marketable skills. (Id. at 82.) In this regard, the Board acknowledged petitioner's prison work as a lens cutter, sewing machine mechanic, and upholsterer and commended him for having no disciplinary write-ups in his file. (Id. at 20-26.) However, the Board found that petitioner had not made a sufficient effort to find outside employment, nor demonstrated the "coping skills" and "life management skills" that

demonstrated a likelihood of success outside of prison.  (Id. at 83; see id. at 40-41 (noting that petitioner had not contacted potential employers and had no job lined up were he to be released from prison).)

The Board also concluded that petitioner lacked insight into the reasons for his crime, which "renders your words of remorse . . . hollow and superficial[.]"  (Id. at 84.)  In making this finding the Board cited a  2007 psychological evaluation of petitioner which described him as "insight limited." (Id.; see id. at 33.)  Petitioner was questioned about this assessment at his 2007 parole hearing, leading to the following exchange:

> Attorney Christensen: Well do you understand what was meant by . . . limited insight?
>
> Inmate Velasquez:  Well I told her I was on drugs at the time, and that my whole – I told her that I should have been at home, I should have been with my wife, I should have come home from work instead of out doing what I was doing.  And drugs, and my behavior, I told her that.  And I don't know what she meant by further insight.  I know my judgment was very wrong, it was just –
>
> Deputy Commissioner Shelton: Let me jump in here . . . I would indicate that usually insight means more than "I did drugs."  A lot of people do drugs, but they don't cheat on their wives, and they don't kill people.  I think she wants you to take it a step lower, and see where all of that came from.
>
> Inmate Velasquez: Uh huh.
>
> Deputy Commissioner Shelton: So I think that's what she's talking about.  Going down deeper than, "I was on drugs, and I made a mistake."
>
> Inmate Velasquez: Yeah.

(Id. at 38-39.)

The 2007 psychological evaluation further stated that petitioner "may have a great deal of difficulty coping with stress outside of prison without more serious attention to parole issues, and commitment to his continued sobriety." (Id. at 35.)  The evaluation concluded:

> In the opinion of this examiner, Mr. Velasquez would pose some risk if he were to be released into the community at this time.  He needs to develop greater purpose, and insight, and to develop clear

12

>parole plans.  His plans need to include a greater commitment to his sobriety, and a greater understanding of his behavior to date.

(Id. at 36.)

Citing this psychological report, the Board found that, until petitioner learned to "cope with stress in a non-destructive manner, you continue to be unpredictable, and a threat to others." (Id. at 84-85.)  "There was a rage about you," one Board member observed, concluding,

>and the violence and the vehemence you took out upon a woman . . . . You need to go deeper.  You need to figure it out, because you haven't convinced me, No. 1., that you're going to stay away from drinking or drugs, and you haven't convinced me that you know how to deal with people.

(Id. at 85-86.)

Based upon these findings, the Board issued a two-year denial of parole. (Id. at 86.)

V.  State Court Decision

In the last reasoned state court decision to address petitioner's claim, the Los Angeles County Superior Court analyzed the Board's 2007 decision denying parole as follows:

>The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on September 11, 2007.  The Petitioner was denied parole for two years.  The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he is released.  The Board based its decision primarily on the commitment offense and the Petitioner's previous criminal history.
>
>The Court finds that there is some evidence to support the Board's finding that the commitment offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.  Cal. Code Regs., tit. 15 § 2402, subd. (c)(1)(E).  The crime appears to have been a result of the Petitioner's use of alcohol and drugs which led him to brutally kill an unarmed woman.
>
>The Court also finds that the Petitioner had a previous criminal history.  Cal. Code Regs., tit. 15 § 2402, subd. (c)(2).  The record indicates that the Petitioner committed burglary as a juvenile and also committed robbery and commercial burglary as an adult.  The Board also noted that the District Attorney's Office had opposed

13

> the Petitioner's release. While this is not a factor on which the Board may rely to deny parole, such opposition may be properly considered. Penal Code §3402.
>
> As noted by the California Supreme Court, the commitment offense alone can constitute a sufficient basis for denial of parole and the Board can weigh the amount of violence involved heavily in making its decision. In re Dannenberg (2005) 34 Cal. 4th 1061, 1084. In this case, the Board properly considered the commitment offense, the previous criminal history, as well as the fact that a 2007 psychological report concluded that the Petitioner would pose some risk if he were released on parole. The report indicated that the Petitioner needed to include greater commitment to sobriety. (Hearing Transcript, pages 35-36.)
>
> The Board also noted several positive gains that the Petitioner had achieved while incarcerated. It noted that he had a very commendable institutional record, and that he had been found suitable for parole in 2003 by another Board. That finding was reversed by the Governor. However, it concluded that despite these gains, the Petitioner posed an unreasonable threat to public safety at the time of its hearing. Penal Code § 3041(b).
>
> Finally, the Court finds that the Board did not err in denying the Petitioner parole for a period of two years. The reasons were specified in the Board's decision, and essentially repeated the rationale for denying parole. The reasons need not be completely different from those justifying the denial of parole, and a sufficient basis for the two-year denial did appear in the record as a whole. See In re Jackson (1985) 39 Cal.3d 464, 479.
>
> Accordingly, the Petition is denied.

(Opinion at 2-3.)

VI. Discussion

Upon reviewing this record, the undersigned concludes that the state courts did not unreasonably apply the "some evidence" standard in denying petitioner habeas relief, nor did they base their decision on an unreasonable determination of the facts. Rather, the state courts reasonably determined that the 2007 psychological evaluation of petitioner, which concluded that he would pose some risk to society if paroled, constituted "some evidence" of current dangerousness when considered in conjunction with petitioner's criminal history and the circumstances of his commitment offense. Moreover, the undersigned would note that based on

the 2007 psychological report and the answers petitioner gave in response to questioning at his suitability hearing, Board members expressed concern that petitioner lacked insight into the reasons for his crime, which was brutal in nature. They also found that he lacked the coping skills and/or commitment to sobriety that would demonstrate the likelihood of success on parole. Having considered petitioner's positive achievements and good behavior while in prison, the Board nonetheless concluded that, at the time of 2007 suitability hearing, he continued to be "unpredictable, and a threat to others." (Board Hearing at 84.)

Petitioner argues that because he was found suitable for parole in 2003[4], and has done nothing in the intervening years to suggest he is any more dangerous than he was in 2003, he has a constitutional right to release on parole. This argument is based on an incorrect premise. The question before the state court was not whether, given the Board's finding of parole suitability in 2003, consistency required the Board to again find petitioner suitable for release on in 2007. Rather, the state court was tasked to determine whether the Board's 2007 decision denying parole, standing alone, was supported by "some evidence" of petitioner's current dangerousness. Based on the evidence before the Board in 2007, the state courts determined that the "some evidence" standard was met.

The undersigned finds the determination of the state courts not to be an unreasonable application of the California "some evidence" standard nor to be based on an unreasonable determination of the facts in light of the evidence of record. This conclusion is based on the 2007 psychological report, which strongly suggested that petitioner was not yet suitable for parole and characterized him as posing "some risk" to society if released, as well as the minimally stringent nature of the "some evidence" standard. See Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). Therefore, petitioner is not entitled to federal

---

[4] As noted above, in 2004 the Governor reversed this 2003 grant of parole by the Board.

habeas relief with respect to the Board's 2007 decision denying him parole.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (Doc. No. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: December 6, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
vela0243.hc